*In re* ALFREDO CASTRO MESA, DELWIN VÉLEZ SANTIAGO, DAVID COLÓN O'NEILL Y ANTONIO E. ARRAIZA.

*Número:* CE-87-798 *Resuelto:* 20 de noviembre de 1992

*Rafael Ortiz Carrión, Procurador General, Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz, Subprocuradora General, y Miriam Álvarez Archilla, Procuradora General Auxiliar,* abogados del Estado Libre Asociado de Puerto Rico; *Libertario Pérez Rodríguez y Demetrio Fernández,* abogados de Alfredo Castro Mesa, Delwin Vélez Santiago y David Colón O'Neill, querellados; *Manuel Fermín Arraiza,* abogado de Antonio E. Arraiza, querellados; *Víctor M. Ramírez Morell,* Comisionado Especial.

PER CURIAM: La presente querella es consecuencia de la intervención de los abogados del epígrafe en el caso Civil Núm. CD-80-381, *Santa Pérez Torres v. Antonio Maysonet, etc.,* pleito que se dilucidó ante el Tribunal de Distrito, Sala de Vega Baja. La demandante Santa Pérez Torres contrató al demandado Antonio Maysonet para realizar varias labores de reparación en su casa. Al percatarse ella de la existencia de alegados defectos de construcción, los cuales no fueron corregidos por Maysonet, doña Santa le retuvo parte del dinero adeudado por concepto del contrato de servicios pactado entre ambos. Posteriormente, doña Santa inició una acción judicial contra el señor Maysonet ante el mencionado foro judicial, representándola en la misma el Lcdo. Antonio E. Arraiza. El señor Maysonet, por su parte, contestó la demanda y presentó una reconvención por incumplimiento de contrato y daños y perjuicios, estando éste representado por los abogados Alfredo Castro Mesa, Delwin Vélez Santiago y David Colón O'Neill. Luego del trámite correspondiente, el referido tribunal dictó sentencia, declarando sin lugar la demanda y con lugar la reconvención, ordenando a la señora Pérez a satisfacer al señor Maysonet la suma de $3, 394.40. Luego de advenir final y firme la sentencia dictada, se procedió a embargar el inmueble perteneciente a la señora Torres en aseguramiento de sentencia, ordenándose su venta en pública subasta.

En la subasta celebrada, se le otorgó la propiedad al

señor Maysonet al ser éste el único licitador. *Una vez el inmueble pasó a ser de su propiedad*, Maysonet le reconoció una participación en dicha propiedad a los abogados Castro Mesa, Vélez Santiago y Colón O'Neill, en pago de sus respectivos honorarios. *Dicho acuerdo se tomó debido a que Maysonet no contaba con los medios suficientes para pagarles a sus abogados de otra forma.*

Inconforme, la señora Pérez se querelló de la conducta de los abogados ante el Procurador General.[1] Alegó en su queja, que los abogados Castro Mesa, Vélez Santiago y Colón O'Neill incurrieron en conducta antiética al adquirir parte de una propiedad objeto del litigio en que intervenían en representación del señor Maysonet. Señaló, además, que su propio abogado, Lcdo. Antonio E. Arraiza Miranda, incurrió en violación a los Cánones de Ética al no mantenerla informada de todos los aspectos de la acción civil que había presentado en representación suya.

Habiendo presentado el Procurador General un informe al respecto ante este Tribunal, instruimos a dicho funcionario para que radicara querella. El Procurador presentó querella contra los licenciados Alfredo Castro Mesa, Delwin Vélez Santiago y David Colón O'Neill por violación a los Cánones 23, 24 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Los cargos imputados son los siguientes:

*CARGO NÚM. 1*: Los abogados Alfredo Castro Mesa, Delwin Vélez Santiago y David Colón O'Neill violaron el Cánon 23 del

---

[1] Procede que se señale que la querellante Pérez Torres, en adición a querellarse de los abogados ante el Procurador General, radicó un pleito "sobre acción civil" ante el Tribunal Superior de Puerto Rico, Sala de Bayamón, contra los mencionados abogados para recobrar los daños y perjuicios sufridos por ella como consecuencia de la actuación de éstos.

En dicho pleito —Civil Núm. 84-380— se dictó "Sentencia Parcial" el día 6 de julio de 1987, mediante la cual se tuvo "a la demandante por desistida con perjuicio de su causa de acción contra los co-demandados" (*exhibit* XXII, pág. 77) abogados querellados y sus respectivos cónyuges. Dicho "desistimiento con perjuicio" estuvo condicionado al pago, por los abogados querellados a la querellante Pérez Torres, de la suma de $15,000, sentencia parcial que fue satisfecha. Surge del expediente, en adición, que dentro del mencionado pleito, la querellante obtuvo la *suma adicional* de $5,000 de parte del señor Maysonet.

Código de Ética Profesional al adquirir un interés propietario (50%) en un inmueble embargado y adquirido por su cliente mediante venta judicial en aseguramiento de Sentencia. Este inmueble estaba íntimamente ligado a las alegaciones del pleito principal, en el cual los querellados representaron a la parte demandada y reconveniente y la participación fue adquirida el mismo día en que el cliente otorgó la escritura de venta judicial.

*CARGO NÚM. 2*: Los abogados Alfredo Mesa, Delwin Vélez Santiago y David Colón O'Neill violaron el Canon 24 del Código de Ética Profesional al incurrir en las siguientes conductas reñidas con el modo de acordar los honorarios de abogado:

a. No reducir a escrito el acuerdo de Honorarios de abogado sin razón de peso alguno para tal omisión.

b. Hacer un contrato de honorarios de abogado contingente a que si se ganaba la reclamación de su cliente, demandado y reconveniente, le correspondería a los abogados la mitad de lo que la demandante y reconvenida le debía a su cliente y recibir posteriormente una suma irrazonable, en exceso de lo pactado que les produjo además un enriquecimiento injusto.

*CARGO NÚM. 3*: Los abogados Alfredo Castro Mesa, Delwin Vélez Santiago y David Colón O'Neill violaron el Cánon 38 de Ética Profesional cuando adquirieron interés en la propiedad embar[g]ada y subastada por su cliente creando al menos la apariencia de enriquecimiento injusto a su favor y empobrecimiento injusto a favor de la parte afectada. Comentarios, objeciones y recomendaciones al informe y determinaciones de hechos del Comisionado Especial, Honorable Víctor M. Ramírez Morell, págs. 1–2.

Al Lcdo. Antonio E. Arraiza Miranda, el Procurador le imputó los cargos siguientes:

*CARGO NÚM 1*: El Lcdo. Antonio E. Arraiza violó el Canon 18 del Código de Ética Profesional mediante la conducta demostrada por éste al recomendar a su cliente, con el propósito de detener la venta en pública subasta de propiedad, que constituyera hipoteca sobre dicho bien que previamente tenía anotación preventiva de embargo, toda vez que dicha constitución de hipoteca era contraria a la ley y no podía surtir el efecto que el abogado recomendaba.

*CARGO NÚM 2*: El Lcdo. Antonio E. Arraiza violó el Cánon 19

del Código de Ética Profesional mediante la conducta demostrada por éste al no informar a su cliente del derecho de revisar la sentencia y tampoco mantenerla informada de los procedimientos de ejecución de sentencia una vez ésta era ejecutable, toda vez que la cliente en este caso era una persona de escasos conocimientos y desconocía el efecto de la sentencia que culminó con la venta de su propiedad en pública subasta. Comentarios, objeciones y recomendaciones al informe y determinaciones de hechos del Comisionado Especial, Honorable Víctor M. Ramírez Morell, págs. 2–3.

Contestada la querella por los abogados, designamos al Hon. Víctor Ramírez Morell para que actuara en calidad de Comisionado Especial, examinara la prueba que tuvieran a bien presentar las partes, y rindiera el correspondiente informe ante este Tribunal. Hemos examinado el informe radicado por el Comisionado Especial, así como la prueba documental sometida y la transcripción de la prueba presentada durante las vistas celebradas. Estando en posición de resolver, procedemos a así hacerlo.

I

En primer lugar, atendemos los cargos imputados a los abogados Castro Mesa, Vélez Santiago y Colón O'Neill. Alega el Procurador General que la adquisición por parte de dichos abogados de parte del inmueble adjudicado en venta judicial a su cliente constituye una violación al citado Canon 23 del Código de Ética Profesional. Este canon dispone:

El abogado no debe adquirir interés o participación alguna en el asunto en litigio que le haya sido encomendado.

Un abogado no debe adelantar o prometer ayuda financiera a su cliente para gastos médicos o subsistencia, excepto que puede adelantar el pago de las costas del litigio, y los gastos de investigación y de exámenes médicos necesarios para representar debidamente el caso de su cliente.

La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundados en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bie-

nes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen. 4 L.P.R.A. Ap. IX, C. 23.

 Hemos resuelto que una actuación contraria a este postulado amerita la separación del abogado del ejercicio de la profesión. *In re Sánchez Ferreri*, 115 D.P.R. 40 (1984); *Colón v. All Amer. Life & Cas. Co.*, 110 D.P.R. 772 (1981); *In re Cepeda Parrilla*, 108 D.P.R. 353 (1979). No obstante, es necesario establecer si en efecto la participación que adquirieron los abogados querellados en el inmueble perteneciente a su cliente Antonio Maysonet constituye una compra de "bienes litigiosos" enmarcada dentro del alcance de este canon.

 Como es sabido, la prohibición sobre compraventa de bienes contenido en el Art. 1348 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3773, se extiende a los abogados por lo que a éstos les está prohibido la compraventa de los bienes y derechos que fueren objeto de un litigio en que intervengan por su profesión. Similar prohibición contiene la Sec. 11 de la Ley de 11 de marzo de 1909 (4 L.P.R.A. sec. 742).[2] Al interpretar el alcance de esta disposición, *la doctrina señala que el carácter litigioso y la intervención del abogado deben coincidir con el momento de la adquisición.* Por tal razón la prohibición es inaplicable cuando el abogado ha cesado en sus funciones al tiempo de la transmisión o adquisición de los bienes. M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Edersa, 1980, T. XIX, págs. 150–151; J.M. Manresa y Navarro, *Comentarios al Código Civil español*, 6ta ed. rev., Madrid, Ed. Reus, 1969, Vol. 1, T. X, págs. 193–198; J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, págs. 132–134. Al

---

[2] Como excepción, hemos dicho que una cesión de las costas decretadas en un pleito como pago por servicios profesionales no está comprendida dentro de la prohibición del Art. 1348 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3773. *Vázquez v. Martínez et al.*, 17 D.P.R. 1134 (1911).

analizar este articulado, hemos expresado que el mismo debe interpretarse restrictivamente y que su aplicación comprende sólo aquellos casos que caen bajo su letra. *Dennis, Metro Invs. v. City Fed. Sav.*, 121 D.P.R. 197 (1988).

■ De acuerdo con la prueba examinada, en el presente caso *no* se configura la conducta prohibida por el citado Canon 23. Si bien los abogados querellados adquirieron una participación en un bien inmueble que había sido ejecutado por su cliente Antonio Maysonet para cobrar la sentencia, *dicha adquisición ocurre luego de que la sentencia dictada en el caso fuera final y firme.* El señor Maysonet advino dueño del inmueble, terminando así el carácter litigioso de la propiedad.([3]) Por lo tanto, en el momento en que los querellados adquieren parte del bien inmueble propiedad del señor Maysonet, ya habían cesado como abogados en el referido pleito.

■ El Procurador General, en el segundo cargo, les imputó a dichos abogados una violación al Canon 24 del Código de Ética Profesional, ante, basada dicha alegación en que los querellados no acordaron sus honorarios por escrito, además de cobrar honorarios contingentes irrazonables. En relación con los honorarios profesionales, el Canon 24, ante, específicamente dispone que su fijación debe siempre regirse por el principio de que "nuestra profesión es una parte integrante de la administración de la justicia y no un mero negocio de lucro". Dicho principio requiere que el acuerdo a que llegue el abogado y su cliente en cuanto a los honorarios sea reducido a escrito. El propósito de ello es evitar controversias con los clientes sobre la compensación por los servicios prestados. A tales efectos dijimos en *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161 (1989), que a pesar de que es deseable que los

---

([3]) El Comisionado Especial que estuvo a cargo del caso concluyó que la titularidad del inmueble no era objeto del litigio ni se podía afectar con el resultado del pleito. Añade que cuando los abogados querellados adquirieran su participación en el bien inmueble como pago de honorarios dicho bien no estaba en litigio.

acuerdos de honorarios profesionales se pactan por escrito, y que éstos se redacten libre de ambigüedades y con óptima claridad en sus términos, consignando las contingencias previsibles que pudieran surgir durante el transcurso del pleito, esto no significa que los contratos verbales de honorarios de abogado no sean exigibles. Véase, en adición, *Nassar Rizek v. Hernández*, 123 D.P.R. 360 (1989).

En el caso que nos ocupa, los abogados querellados llegaron a un acuerdo verbal de honorarios contingentes. Esto se hizo para facilitar el trámite del caso, ya que el señor Maysonet es una persona de recursos moderados y prefirió este tipo de acuerdo de manera que sus abogados cobraran del total que se adjudicara en la sentencia.[4] Si bien el acuerdo verbal de honorarios profesionales no representa la mejor práctica, se desprende del testimonio prestado por el señor Maysonet en la vista celebrada ante el Comisionado Especial, que éste así lo aceptó.[5]

Los abogados querellados representaron al señor Maysonet: en la demanda de daños y perjuicios radicada por la señora Santa Pérez Torres contra Antonio Maysonet, en la reconvención instada por el señor Maysonet, y en el procedimiento de ejecución de sentencia. Además, lo representaron en el procedimiento de anulación de una hipoteca que gravaba el inmueble objeto de ejecución. Por dichos servicios, cobraron la cantidad de $13, 468.35 en total. Somos del criterio que los honorarios cobrados y recibidos por dichos abogados no fueron irrazonables.[6]

---

[4] Hemos dicho que los honorarios contingentes no están reñidos con la ética, especialmente cuando el cliente los prefiera y se le haya explicado de sus consecuencias. Véase *Sánchez Acevedo v. E.L.A.*, 125 D.P.R. 432 (1990).

[5] Téngase presente que el señor Maysonet nunca presentó querella alguna contra sus abogados, y por el contrario, indicó estar satisfecho con sus servicios.

[6] Al fijar los honorarios profesionales las partes pueden tomar en consideración entre otras cosas, la cuantía envuelta en el litigio; los beneficios que derivará el cliente de los servicios del abogado; la habilidad que requiere conducir el caso adecuadamente; la contingencia de la compensación; y la dificultad y complejidad de las cuestiones envueltas. Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX;

No habiendo infringido los referidos abogados los citados Cánones 23 y 24, forzosa es la conclusión de que tampoco infringieron las disposiciones del Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

## II

En cuanto a los cargos imputados al Lcdo. Antonio Arraiza, atendemos, en primer término, el segundo de los cargos imputados. Surge de la prueba, *creída por el Comisionado Especial*, que tan pronto este abogado recibió la notificación de la sentencia del caso en que representaba a la señora Pérez Torres, se comunicó con ella varias veces para indicarle el resultado del pleito. Además, la orientó sobre su derecho de apelación, de las probabilidades de éxito que tenía, y del costo envuelto. Luego de ella haber sido informada ésta optó por no apelar el caso y manifestó su deseo de pagar la suma adeudada. El licenciado Arraiza continuó asesorando a la querellante durante el proceso de ejecución de sentencia, e inclusive hizo gestiones para que su cliente pudiera satisfacer el importe de la misma. Vemos, pues, que el licenciado Arraiza cumplió con su deber de información al cliente conforme a lo dispuesto por el Canon 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.([7]) Véanse: *In re Secretario de Justicia*, 118 D.P.R. 827

---

*Ramírez, Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161 (1989); *In re Díaz Lamoutte*, 106 D.P.R. 450 (1977).

La multiplicidad de procedimientos en que los referidos abogados representaron a su cliente hace inaplicable a los hechos de este caso la norma establecida en *In re Clavell Ruiz*, 131 D.P.R. 500 (1992), a los efectos de que "el cobro de un cincuenta por ciento (50%) en honorarios contingentes" por parte de un abogado "excede los honorarios que acostumbradamente cobran los abogados en Puerto Rico" (íd.), situación que "hiere el sentido de lo justo" (íd.); razón por la cual somos de la opinión que dichos abogados no infringieron el Canon 24 del Código de Ética Profesional, ante.

([7]) *Canon 19. Información al cliente*

"El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado.

"Siempre que la controversia sea susceptible de un arreglo o transacción razonable debe aconsejar al cliente el evitar o terminar el litigio, y es deber del abogado

(1987); *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984); *In re Cardona Vázquez*, 108 D.P.R. 6 (1978).

■ El Procurador General, mediante el primero de los cargos, le imputa al licenciado Arraiza una infracción al Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, basada la misma en que dicho abogado le recomendó a su cliente, la señora Pérez, que constituyera una hipoteca sobre su propiedad, la cual fue posteriormente ejecutada. Aunque surge del expediente ante nuestra consideración que el licenciado Arraiza acepta que aconsejó a su cliente sobre la constitución de una hipoteca, el propósito de ello era conseguir el dinero para pagar el monto de la sentencia y así evitar que su cliente corriera el riesgo de perder su propiedad. Inclusive, el licenciado Arraiza se encargó de hacer las gestiones necesarias para conseguir el préstamo. Mientras esto sucedía, la parte vencedora en el pleito presentó una moción de aseguramiento de sentencia sobre el inmueble, trámite que no se notificó a la parte contraria ni a su abogado. Por tal razón el aquí querellado continuó gestionando el préstamo para que su cliente no perdiera la casa. El Canon 18, ante, le impone al abogado el deber de defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. La ética le exige actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra sino el espíritu y los propósitos que la informan.

■ De la actuación del licenciado Arraiza no podemos inferir que existiera algún propósito de evadir la ley o los fines de la justicia. Por el contrario, todas sus gestiones fueron encaminadas a cumplir con la sentencia del Tribu-

---

notificar a su cliente de cualquier oferta de transacción hecha por la otra parte.

"El abogado que representa varios clientes con intereses comunes o relacionados entre sí no debe transigir ninguno de los casos envueltos sin que cada cliente esté enterado de dicha transacción y sus posibles consecuencias."

nal de Distrito, de manera que su cliente pudiera satisfacer la totalidad de la misma.

## III

Concluimos que la prueba reseñada no sostiene los cargos imputados a los licenciados Alfredo Castro Mesa, Delwin Vélez Santiago, David Colón O'Neill y Antonio E. Arraiza Miranda. *No obstante, la presente debe servir como ejemplo para que los miembros de la profesión eviten al máximo situaciones análogas que pudieran echar sombras innecesariamente sobre su conducta profesional.*

*Se dictará sentencia mediante la cual se archiva la querella presentada contra los abogados del epígrafe.*

Así lo pronunció, manda el Tribunal y certifica el señor Secretario General.

El Juez Asociado Señor Hernández Denton "está conforme con la Parte II de la Opinión del Tribunal y concurre con la Parte I por entender que, una vez los abogados querellados entregaron a la señora Pérez Torres la suma de $15,000 en transacción de la acción de retribución por enriquecimiento injusto, se satisfizo 'el prejuicio privado de la persona afectada [y], en ausencia de un interés público mayor, de ordinario, el asunto no debe trascender ni penetrar los recintos de este Foro o los de la Oficina del Procurador General'. *In re Pagán Ayala*, 117 D.P.R. 180, 187 (1986)". El juez Asociado Señor Negrón García se inhibió.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*